```
          IN THE UNITED STATES DISTRICT COURT
         FOR THE EASTERN DISTRICT OF PENNSYLVANIA


TEXAS EASTERN TRANSMISSION, LP    :
5400 Westheimer Court             :
Houston, TX  77056,               :
                                  :
          Plaintiff               :
                                  :       CIVIL ACTION - EQUITY
     v.                           :
                                  :       No. _____
THOMAS W. FLECK and               :
CATHY ANN FLECK                   :
1872 West Rock Road               :
Perkasie, PA  18944,              :
                                  :
          Defendants              :
```

**COMPLAINT**

Texas Eastern Transmission, LP ("Texas Eastern"), by its counsel, files its Complaint as follows:

COUNT I

1. This is a suit to prevent the unwarranted interference by defendants with the construction of a pipeline across property owned by the defendants, such construction having been authorized by an easement granted by defendants' predecessor-in-title to Texas Eastern's predecessor-in-title, and by a certificate of

public convenience and necessity duly issued by the Federal Energy Regulatory Commission.

2. Texas Eastern is a Delaware limited partnership, duly registered to do business in the Commonwealth of Pennsylvania, with its principal place of business at 5400 Westheimer Court, Houston, Texas 77056.

3. Defendants, Thomas W. Fleck and Cathy Ann Fleck, his wife, are citizens of the Commonwealth of Pennsylvania. Defendants are the owners of property in East Rockhill Township, Bucks County, Pennsylvania (the "Property").

4. This Court has original jurisdiction over this action under 28 U.S.C.A. §1332, because it is a suit between citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs.

5. Venue is properly laid in this District under 28 U.S.D.C. §1391(a), because the cause of action arose in this District.

6. Texas Eastern owns and operates interstate natural gas pipelines pursuant to certificates of convenience and necessity issued by the Federal Energy Regulatory Commission (or its predecessor, the Federal Power Commission). Texas Eastern serves customers throughout Pennsylvania, New Jersey, parts of New York,

and New England (said service area being hereinafter referred to as the "Northeast").

7. On October 9, 1957, October 29, 1957 and September 20, 1960, defendants' predecessors-in-title granted to Texas Eastern Penn-Jersey Transmission Corporation or Texas Eastern Transmission Corporation three (3) easements and rights of way to "lay, construct, maintain, operate, alter, repair, remove, change the size of, and replace at any time, or from time to time, one or more additional lines of pipe and appurtenances thereto," across the property (the "Grants"). Copies of the Grants are attached as Exhibit A.

8. Pursuant to the Grants, Texas Eastern Penn-Jersey Transmission Corporation or Texas Eastern Transmission Corporation constructed three pipelines across the Property.

9. Texas Eastern has succeeded to the rights of Texas Eastern Penn-Jersey Transmission Corporation and those of Texas Eastern Transmission Corporation under the Grants, and now owns the three pipelines. The pipelines are designated in the internal records of Texas Eastern as Line 12 (24-inch diameter), Line 19 (30-inch diameter), and Line 27 (30-inch diameter).

10. Believing that it would be in the best interests of the citizens in its service area if Texas Eastern were to increase its capacity and deliver additional gas to the Northeast

beginning in the Winter of 2002-2003, Texas Eastern applied for permission to do so from the Federal Energy Regulatory Commission (the "FERC").

11. The FERC gave public notice of Texas Eastern's application, duly considered the same, and on June 26, 2002, issued a certificate of public convenience and necessity authorizing the construction.

12. As authorized by the certificate of public convenience and necessity and the Grants, Texas Eastern proposes to lay and construct Line 28 by installing a pipeline having a diameter of 36 inches.

13. The new pipeline will be laid within the easement area created by the Grants, and Texas Eastern will reimburse the defendants for damages caused by this construction as required by the Grants.

14. During construction, which is expected to last about three months, Texas Eastern will require temporary working space adjacent to the existing right of way. *See* Exhibit B to this Complaint for dimensions of the temporary work space. Texas Eastern will likewise pay damages for this temporary use as required by the Grants.

15. The Grants give Texas Eastern the express power to "lay", "construct", "maintain" and "operate" one or more

additional pipelines.  Because of these express powers, and the fact that the burden on the servient estate will not be increased, the construction is authorized by the Grants.

16. Construction of the pipeline across the defendants' property is scheduled to begin on or after July 22, 2002. Defendants have informed Texas Eastern that they will not permit construction to proceed, thereby interfering with the exercise of Texas Eastern's lawful rights.

17. The additional pipeline is necessary to increase Texas Eastern's capacity to meet the demand for natural gas in the Northeast.  It must be completed to meet the needs of the public for the Winter of 2002-2003.

18. Numerous crews (often as many as six or seven) of Texas Eastern's contractors are involved in construction of the pipeline (clearing, grading, excavating, installation, etc.). These crews rapidly proceed in sequence through a given property, each crew having a delay charge payable by Texas Eastern in the event the crew is held up by reason of a dispute.  If a dispute arises and all the crews "bottleneck" at a property boundary, the total delay charges payable by Texas Eastern can amount to more than $150,000 per day, a prohibitive amount.

19. Texas Eastern's only alternative in the situation described in paragraph 18 is to arrange for the crews to

temporarily move around the property in dispute and begin construction at a different site before returning to the property after the dispute has been resolved.  However, because this approach disrupts the contractor's schedule and because very heavy equipment must be moved, the cost of such a "move around" (payable by Texas Eastern to the contractor) can exceed $100,000 per incident.

20.  Texas Eastern will suffer irreparable harm if prevented by defendants from proceeding with construction on schedule, since Texas Eastern will incur substantial damage (including charges by its contractor by reason of any delay or "move around" in construction), which may exceed defendants' financial resources and be unrecoverable from them.

21.  The public will suffer severe inconvenience and irreparable harm if Texas Eastern is prevented by defendants from proceeding with construction on schedule, because Texas Eastern will not be able to deliver increased quantities of gas to the Northeast this Winter.

22.  Texas Eastern has no adequate remedy at law, and its interests and those of the public can only be protected by requiring defendants to cease interference with the construction.

WHEREFORE, Texas Eastern prays that this Court preliminarily and, after trial, permanently enjoin defendants:

A.  from interfering with the exercise by Texas Eastern of its property rights under the easement Grants (Exhibit A to the Complaint), which include:

> (1) the right to lay, construct, maintain and operate one or more additional pipelines;
>
> (2) a permanent right of way extending from the centerline of each pipeline twenty-five feet on each side; and
>
> (3) temporary work space as revealed in Exhibit B to this Complaint; and

B.  from directly or indirectly denying Texas Eastern access to defendants' property for the purpose of laying, constructing, maintaining, operating, altering, repairing, removing, changing the size of, and replacing pipelines and performing any other activities reasonably incident thereto.

## COUNT II

23. This is a claim for monetary damages (including charges that may be owed to contractors) that Texas Eastern may suffer by reason of defendants' unwarranted interference with the laying, constructing, maintaining and operating by Texas Eastern of additional pipelines across their Property as authorized by the Federal Energy Regulatory Commission.

24. Texas Eastern repeats and reavers paragraphs 2 through 22 above, which are incorporated here by reference.

25. Texas Eastern is already incurring expenses as a result of defendants' interference with its rights, and will suffer additional damages in the future, including delay charges and possible "move around" costs, if defendants are not enjoined from further interference with the rights of Texas Eastern.

26. Defendants are liable for all damages suffered by Texas Eastern as a consequence of defendants' interference with its rights.

WHEREFORE, Texas Eastern prays that the Court enter judgment against defendants in an amount to be determined, including but not limited to all delay charges and "move around" costs incurred by Texas Eastern by reason of defendants' interference with construction between the first day of delay caused by defendants and the date a preliminary injunction is granted.

    Respectfully submitted,

    KEEFER WOOD ALLEN & RAHAL, LLP

Dated: July 19, 2002    By_____
    Charles W. Rubendall II
    I.D. # 23172
    210 Walnut Street
    P.O. Box 11963
    Harrisburg, PA  17108-1963
    717-255-8010

    Attorneys for plaintiff,
    Texas Eastern Transmission, LP