IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| TEXAS EASTERN TRANSMISSION, LP<br>5400 Westheimer Court<br>Houston, TX  77056,<br><br>        Plaintiff<br><br>    v.<br><br>THOMAS W. FLECK and<br>CATHY ANN FLECK<br>1872 West Rock Road<br>Perkasie, PA  18944,<br><br>        Defendants | CIVIL ACTION - EQUITY<br><br>No. _____ |

**MEMORANDUM OF TEXAS EASTERN TRANSMISSION, LP**
**IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION**

I.   INTRODUCTION

Texas Eastern Transmission, LP[1] ("Texas Eastern") brings this suit to obtain preliminary and permanent injunctive relief preventing defendants from improperly interfering with Texas Eastern's right to lay, construct, maintain and operate an

---

[1] Texas Eastern Transmission, LP is a Delaware limited partnership, formerly known as Texas Eastern Transmission Corporation, successor to Texas Eastern Penn-Jersey Transmission Corporation.

additional pipeline crossing defendants' property.[2] Texas Eastern's pipeline construction is permitted by recorded easements granted by defendants' predecessors-in-title, and the construction has been authorized by a certificate of public convenience and necessity duly issued by the Federal Energy Regulatory Commission ("FERC"). It is essential that Texas Eastern have immediate access to the property. Such access is being denied by the defendants.

II.  FACTS

Texas Eastern is a Delaware limited partnership engaged, inter alia, in the transportation of natural gas by pipeline in interstate commerce, and is subject to regulation by the Federal Energy Regulatory Commission under the Natural Gas Act, 15 U.S.C.A. §717. Texas Eastern serves customers throughout Pennsylvania, New Jersey, parts of New York, and New England (said service area being hereinafter referred to as the "Northeast"). As a natural gas company, Texas Eastern is vested with the right of eminent domain under 15 U.S.C.A. §717f(h).

Defendants are the owners of a certain parcel of real estate in East Rockhill Township, Bucks County (the "property").

Defendants' predecessors-in-title granted to Texas Eastern Penn-Jersey Transmission Corporation or Texas Eastern

---

[2] Texas Eastern also seeks damages for any monetary harm it suffers prior to the entry of a preliminary injunction.

Transmission Corporation three (3) easements and rights of way to "lay, construct, maintain, operate, alter, repair, remove, change the size of, and replace at any time, or from time to time, one or more additional lines of pipe and appurtenances thereto" across the property (the "Grants").  Copies of the Grants are attached to the complaint as Exhibit A.  Pursuant to the Grants, Texas Eastern Penn-Jersey Transmission Corporation and/or Texas Eastern Transmission Corporation constructed three pipelines across the property.

   Texas Eastern succeeded to the rights of  Texas Eastern Penn-Jersey Transmission Corporation and Texas Eastern Transmission Corporation under the Grants and now owns the three pipelines, which are designated in Texas Eastern's internal records as Line 12 (24-inch diameter), Line 19 (30-inch diameter), and Line 27 (30-inch diameter).

   Recognizing that it would benefit the citizens in its service area if Texas Eastern were able to deliver additional gas to the Northeast, Texas Eastern applied last year for permission from FERC to construct an additional line, known as Line 28. Texas Eastern's "T.I.M.E. Project" involves the expenditure of hundreds of millions of dollars for pipeline construction across the Commonwealth of Pennsylvania, including the property owned by the defendant.

FERC gave public notice of Texas Eastern's application, duly considered the same over a period of months, and on June 26, 2002, issued a certificate of public convenience and necessity. Pursuant to that FERC authorization and in accordance with its easement powers, Texas Eastern is constructing a new, additional 36-inch pipeline (designated "Line 28") crossing the defendant's property. The new pipeline will be laid, to the extent possible, parallel to the existing pipelines.

A permanent right of way adjacent to and extending twenty-five feet from the centerline of each pipeline is required for Texas Eastern's normal operation and maintenance of the pipelines. During construction, which is expected to last about three months, Texas Eastern will require temporary working space adjacent to the existing permanent right of way. Texas Eastern will reimburse the defendants for any damages caused by the construction, all as required by the Grants.

Numerous crews (often as many as six or seven) of Texas Eastern's contractors are involved in construction of the pipeline (clearing, grading, excavating, installation, etc.). These crews rapidly proceed in sequence through a given property, each crew having a delay charge payable by Texas Eastern in the event the crew is held up by reason of a dispute. If the crews

"bottleneck" at a property boundary, the total delay charges payable by Texas Eastern can exceed $150,000 per day.

In the event of a dispute, Texas Eastern's only alternative to a "bottleneck" is to arrange for the crews to temporarily move around the property and begin construction at a different site, returning after the dispute has been resolved.  However, because this disrupts the contractor's schedule and because very heavy equipment must be moved, the cost of such a "move around" (payable by Texas Eastern to the contractor) may exceed $100,000 per incident.

Construction of the pipeline across the defendants' property is scheduled to begin on or after July 22, 2002.  Defendants have informed Texas Eastern that they will not permit construction to proceed, thereby interfering with the exercise of Texas Eastern's lawful rights under the Grants.

As FERC has determined, the additional pipeline is necessary to increase Texas Eastern's ability to satisfy the demand for natural gas in the Northeast during the Winter of 2002-2003.  It is essential that construction be completed by November, when cold weather arrives.

The Grants give Texas Eastern the express power to "lay", "construct", "maintain" and "operate" one or more additional pipelines.  As discussed below, because of these express powers,

Texas Eastern clearly has the right under the Grants to perform the proposed construction work.

Thus, a preliminary injunction is warranted. The defendants' interference with construction and the consequent delay threatens irreparable damage to the public, which will suffer if gas shortages occur. In addition, the possible inability of defendants to reimburse Texas Eastern fully for the cost of a "bottleneck" or a "move around" underscores the necessity for an injunction, because Texas Eastern cannot otherwise be made whole.

III. ARGUMENT

An easement is, of course, an interest in real estate which is unique. Consequently, Texas Eastern is entitled to invoke the equity jurisdiction of this Court in seeking to protect and uphold its rights. The only issue raised by these proceedings, therefore, is whether Texas Eastern is entitled to equitable relief on a preliminary basis.

The tests by which a motion for preliminary injunction must be judged are well known. Texas Eastern must prove that there is a reasonable probability that it will eventually succeed in the litigation; that Texas Eastern will be irreparably injured if relief is not granted; and that the injury to Texas Eastern in refusing the injunction would outweigh the injury to the

defendant if the injunction is granted.  In addition, the Court must take into account the concerns of other interested parties and the public.  <u>Bill Blass, Ltd. v. Saz Corp.</u>, 751 F.2d 152, 154 (3d Cir. 1984); <u>In re Arthur Treacher's Franchisee Litigation</u>, 689 F.2d 1137, 1143 (3d Cir. 1982); <u>Oburn v. Shapp</u>, 521 F.2d 142, 147 (3d Cir. 1975).

As appears below, under these tests preliminary relief should be granted in this case.

    A.   <u>Texas Eastern's Rights Under the Grants Are Clear Beyond Dispute.</u>

The legal issue in this proceeding is whether Texas Eastern's construction of the additional Line 28 is permitted by the easement.  It is clear that the construction involves laying, constructing, maintaining and operating a pipeline, which are all activities specifically permitted by the language of the easement.

    1.   <u>The Rights to "Lay", "Construct" "Maintain" and "Operate" One or More Additional Pipelines Empower Texas Eastern to Install an Additional Pipeline, Line 28.</u>

When interpreting an easement, the starting point, of course, is the express language of the Grants itself.  <u>E.g.</u>, <u>Merrill v. Manufacturers Light and Heat Company</u>, 409 Pa. 68, 73 185 A.2d 573, 575 (1962) ("To ascertain the nature of the easement created by an express Grants we determine the intention

of the parties ascertained from the language of the instrument."); Nallin-Jennings Park Company v. Sterling, 364 Pa. 611, 615 73 A.2d 390, 392 (1950) ("In construing the Grants … [of] the easement ... the document itself, and that only, can, in the first instance be looked at to discover the extent and nature of the agreement."). Easements are to be construed against the grantor, even in cases where it appears that the easement was drafted by the grantee. E.G., Merrill v. Manufacturers Light and Heat Co., supra, at 73, 185 A.2d at 575.

In this instance, Texas Eastern has the specific right to "lay," "construct," "maintain" and "operate" additional pipelines on defendant's property. In sum, the project is clearly authorized by the specific language of the Grants.

       2.   Because the Construction Will Not Increase the Burden on the Servient Estate, It Is Permitted Under the Grants.

Even if the pipeline construction were not specifically authorized by the Grants, it would be permitted by implication. The Pennsylvania Supreme Court has permitted changes in easement use even where there was no express authorization in the easement. For example, in Lease v. Doll, 485 Pa. 615, 403 A.2d 558 (1979), the Supreme Court permitted the grantee to expand the use of a footpath to accommodate vehicular traffic, because (a) there was no express prohibition against such a use in the

- 8 -

easement, and (b) the expanded use would not "unreasonably interfere" with the use of the servient estate. Piper v. Mowris, 466 Pa. 89, 351 A.2d 635 (1976), and Taylor v. Heffner, 359 Pa. 157, 58 A.2d 450 (1948), are to the same effect. See also Garan v. Bender, 357 Pa. 487, 55 A.2d 353 (1947) (hearses permitted where previously caskets had been carried by hand).

In Bodman v. Bodman, 456 Pa. 412, 321 A.2d 910 (1974), the grantee had a prescriptive easement over a private road which for many years he used to transport farm machinery and other vehicles. Thereafter, the grantee assigned his easement to another, who used it for access to four recreational cabins he had built, with a resultant increase in traffic. The Supreme Court found this change in use to be reasonable, quoting the Restatement of Property:  "... 'normal evolution in the use of the dominant tenement' will permit reasonable increases in the burden imposed on the servient tenement." Id. at 415, 321 A.2d at 912.

In Hammond v. Hammond, 258 Pa. 51, 101 A. 855 (1917), the grantee owned an express easement to use a private road which included a ford across a stream. The grantee constructed a bridge at the location of the ford, and this alteration was permitted by the Supreme Court, saying:

> A grant is to be construed in favor of the grantee and includes whatever is reasonably necessary to an enjoyment of the thing granted ....  The grantee of the free and uninterrupted use of a private road may improve it in such manner as to make it fit for the purpose expressed in the grant, ... if it be done in such way as to cause the least practicable damage to the owner of the servient tenement ....

Id. at 56, 101 A. at 856-857.

In summary, because construction of a new pipeline will not increase the burden on the servient estate, and because it is authorized under the express terms of the applicable easement, the construction is permissible under Pennsylvania law.  Texas Eastern's probability of success is clear.[3]

> B.   The Facts Overwhelmingly Demonstrate that Texas Eastern Is Entitled To Immediate Relief.

It is imperative that Texas Eastern have immediate access to the defendant's property so that construction of the pipeline can be completed by the November deadline.  If construction is delayed, the citizens of the Northeast will be harmed.  Moreover, Texas Eastern will suffer huge damages if pipeline construction is halted.  In all probability, the defendants do not have the

---

[3] An easement carries with it, by law, the space necessary to enjoy it.  E.g., Lease v. Doll, 485 Pa. 615, 621 n.5, 403 A.2d 558, 561 n.5 (1979); Taylor v. Heffner, 359 Pa. 157, 163, 58 A.2d 450 (1948); Bright v. Allen, 203 Pa. 386, 390, 53 A. 248, 249 (1902).  Because of the large size of the equipment involved, Texas Eastern will require a temporary working space during construction of twenty-five feet adjacent to the existing permanent right of way.  Texas Eastern's right to this temporary twenty-five foot wide right of way has been upheld by federal judges in Pennsylvania.  See, e.g., Texas Eastern Transmission Corporation v. Grassi, 1992 WL 172594 (E.D. Pa., 1992).

financial resources to pay the damages involved.  Cf. Eli Lilly & Co. v. Premo Pharmaceutical Laboratories, Inc., 630 F.2d 120, 137 (3d Cir.), cert. denied, 449 U.S. 1014 (1980); Connors v. Shannopin Mining Company, 675 F.Supp. 986 (W.D. Pa. 1987).  Thus, Texas Eastern does not have an adequate monetary remedy.

If construction is delayed, Texas Eastern will face daily "bottleneck" or "move around" charges imposed by its contractors. The situation is aptly described by the Court in Plantation Pipe Line Company v. Locke, 290 F.Supp. 752, 754 (N.D. Ala. 1968), as follows:

> Plaintiff has employed a large construction company to lay such additional pipeline whose men and equipment are presently in the vicinity of such lands of the defendant, engaged in building such additional pipeline.  Large and expensive pieces of machinery and numerous personnel are used in constructing such additional pipeline and are presently available and ready to construct the same across defendant's land. If the plaintiff shall be wrongfully delayed in the construction of such additional pipeline, or if it shall be temporarily deprived of its right to construct such additional pipeline across such lands of the defendant, plaintiff will suffer immediately great and irreparable harm.

Thus, it is clear that immediate and irreparable harm will occur if no injunction is granted.

    C.    <u>The Public Interest Will Be Served by an Injunction.</u>

As noted, the public will likewise be adversely affected if the preliminary injunction is not granted.  If the delivery of

gas to the Northeast is restricted or postponed, the ultimate consumers of the natural gas transported by Texas Eastern face the prospect of shortages and increased costs. The public interest requires that a preliminary injunction be granted.

    D.    <u>The Defendants Will Not Be Harmed by an Injunction.</u>

Finally, while denial of a preliminary injunction would irreparably damage public and private interests in the ways described above, the grant of a preliminary injunction would cause no injury of any consequence to the defendants. As a natural gas company, Texas Eastern is vested with the right of eminent domain under 15 U.S.C.A. §717f(h). If Texas Eastern's easement did not grant the right to do this construction, Texas Eastern would be able to condemn an appropriate right-of-way in order to perform the construction. Consequently, it is apparent that Texas Eastern will achieve access to the property sooner or later.

Denial of a preliminary injunction can thus only delay pipeline construction, causing the injury to the public and to Texas Eastern described above without conferring any real benefit on the defendants. Any possible risk to the defendants arising from the grant of an injunction will be eliminated by the injunction bond. Texas Eastern is prepared to post such a bond immediately.

Indeed, it can be said that an injunction benefits the defendants by reducing his exposure to damages which would flow from any "bottleneck" or "move around" charges caused by his improper refusal to grant access to Texas Eastern.

IV. <u>CONCLUSION</u>

Under the circumstances, and for the reasons set out above, Texas Eastern should be granted immediate injunctive relief.

Respectfully submitted,

KEEFER WOOD ALLEN & RAHAL, LLP

Dated: July 19, 2002          By_____
                                Charles W. Rubendall II
                                I.D. # 23172
                                210 Walnut Street
                                P.O. Box 11963
                                Harrisburg, PA  17108-1963
                                717-255-8010

                                Attorneys for plaintiff,
                                Texas Eastern Transmission, LP