```
                IN THE UNITED STATES DISTRICT COURT
              FOR THE EASTERN DISTRICT OF PENNSYLVANIA


TEXAS EASTERN TRANSMISSION,    :
LP,                            :
                               :     CIVIL ACTION - EQUITY
          Plaintiff            :
                               :        No. 02-CV-4956
     v.                        :
                               :         (Judge Padova)
THOMAS W. FLECK and            :
CATHY ANN FLECK,               :
                               :      FILED ELECTRONICALLY
          Defendants           :
```

## TEXAS EASTERN'S BRIEF IN SUPPORT OF
## MOTION TO DISMISS COUNTERCLAIM FOR DAMAGES

**I.   BACKGROUND**

**A.   Procedural Background**

On July 22, 2002, Texas Eastern Transmission, LP[1] ("Texas Eastern") filed its complaint for injunctive relief, seeking to prevent defendants from improperly interfering with Texas Eastern's right to lay, construct, maintain and operate an additional pipeline crossing defendants' property in East

---

[1] Texas Eastern Transmission, LP is a Delaware limited partnership, formerly known as Texas Eastern Transmission Corporation, successor to Texas Eastern Penn-Jersey Transmission Corporation.

Rockhill Township, Bucks County (the "property"). Concurrent with the filing of its complaint, Texas Eastern filed a motion for a preliminary injunction.

On August 12, 2002, the injunction issues were resolved by entry of a consent decree, whose terms are summarized below. The decree included a provision for a hearing on damages absent agreement by the parties as to the amount of same. Texas Eastern thereafter filed an injunction bond in the amount of $20,000.

On May 9, 2003, defendants filed a counterclaim for damages against Texas Eastern. The Court has scheduled a hearing on damages pursuant to paragraph 9 of the consent decree, to take place on August 14, 2003.

### B. Factual Background

Texas Eastern is a Delaware limited partnership engaged, inter alia, in the transportation of natural gas by pipeline in interstate commerce, and is subject to regulation by the Federal Energy Regulatory Commission ("FERC") under the Natural Gas Act, 15 U.S.C.A. §717. Texas Eastern serves customers throughout Pennsylvania, New Jersey, parts of New York, and New England (said service area being hereinafter referred to as the "Northeast"). As a natural gas company, Texas Eastern is vested with the right of eminent domain under 15 U.S.C. §717f(h).

Defendants' predecessors-in-title granted to Texas Eastern's predecessors three (3) easements and rights of way to "lay, construct, maintain, operate, alter, repair, remove, change the size of, and replace at any time, or from time to time, one or more additional lines of pipe and appurtenances thereto" across the property (the "Grants").  (Copies of the Grants are attached to the complaint as Exhibit A.)  Pursuant to the Grants, three pipelines were constructed across the property.

Recognizing that it would benefit the citizens in its service area if Texas Eastern were able to deliver additional gas to the Northeast, Texas Eastern secured a certificate of public convenience and necessity from FERC in 2001 to construct an additional line, known as Line 28.  Texas Eastern's "T.I.M.E. Project" involves the expenditure of hundreds of millions of dollars for pipeline construction across the Commonwealth of Pennsylvania, including the property owned by defendants.

Texas Eastern's complaint and motion for a preliminary injunction were filed after defendants initially denied Texas Eastern access to the property to conduct the pipeline construction operations authorized by FERC and the easements.  However, in a consent decree entered by the Court on August 12, 2002, the parties agreed as follows:

1. Upon twenty-four (24) hours' advance notice to defendants and their counsel, Texas Eastern shall stake out the temporary workspace desired for its construction activities, using mesh safety fence and yellow tape to delineate its boundaries.

2. Upon twenty-four (24) hours' advance notice to defendants and their counsel, Texas Eastern shall remove trees within the delineated temporary workspace, with all trees to be cut flush to the ground surface, and install construction matting per the field recommendations of defendants' arborist.

3. Immediately upon completion of the steps set forth in paragraphs 1 and 2 above, Texas Eastern shall have access to the temporary workspace on defendants' property for its construction activities, including boring under West Rock Road.

4. Within ten (10) days of the date of this order, Texas Eastern shall post an injunction bond in the amount of $20,000, which bond shall be kept in force through and including November 1, 2003.

5. At no time shall Texas Eastern cut or damage any trees outside the delineated temporary workspace on defendants' property.

6. Texas Eastern hereby withdraws any claim it may have for past interference with or delay of its construction activities on the part of defendants.

7. Promptly upon completion of Texas Eastern's construction activities on defendants' property, Texas Eastern's counsel shall notify defendants' counsel that all construction activities have been completed.

8. Within thirty (30) days from the date of such notice from Texas Eastern's counsel,

>           defendants shall present to Texas Eastern
>           their claim for all damages arising from
>           Texas Eastern's construction activities on
>           defendants' property.

The Consent Decree also provided (in paragraph 9) that a hearing would be scheduled "to resolve said claim for damages if the parties have not previously reached an agreement."

II.   **Question Presented**

>     Does defendants' counterclaim allege a
>     legally sufficient claim for damages against
>     Texas Eastern?
>
>     Suggested answer: **No**.

III.  **Argument**

A.    **Pennsylvania Law Does Not Permit Recovery of Both Restoration Costs *and* Diminution in Value of the Real Property in Question.**

The counterclaim for damages arises from Texas Eastern's installation of a new pipeline within an existing easement across the Fleck property, previously established pursuant to three (3) right-of-way grants. The counterclaim does not clearly articulate a legal theory supporting the recovery of damages. However, there is no question a contractual relationship exists between the parties as a result of the written easement agreements.

In *Texas Eastern Transmission Corp. v. Grassi,* 1992 WL 172594 at *7 (E.D. Pa. 1992) (Padova, J.), the Court indicated that a contract-based measure of damages applies in this context unless it can be shown that the easement holder committed a trespass by "exceeding its easement." *See Sigal v. Mfrs. Light and Heat Co.,* 450 Pa. 228, 238, 299 A.2d 646 (1973).[2] Indeed, the existence of a contractual relationship ordinarily precludes recovery on a tort theory under Pennsylvania's "gist of the action" doctrine. *See, e.g., Freestone v. New England Log Homes, Inc.,* 819 A.2d 550, 553-554 (Pa. Super. 2003).

In the easement agreements, Texas Eastern agreed to pay "one dollar per lineal rod" for each additional pipeline, along with "such damages which may arise to growing crops, timber, or fences from the construction, maintenance and operation of" its pipelines.[3]

---

[2] In *Sigal,* the court found that the installation of a second pipe line not authorized by an easement grant constitutes a continuing trespass, for which damages may be awarded. In this case, the installation of the new pipe line was authorized by the applicable grants an a certificate of convenience and necessity issued by FERC.

[3] The September 20, 1960 agreement (included in exhibit A to Texas Eastern's complaint) expressly excludes coverage of damages arising from the *initial* pipeline installation since an allowance for such damages was made in calculating the consideration paid by Texas Eastern for the grant.

-6-

Texas Eastern does not dispute the provisions of the easement grants to compensate the Flecks for "such damages which may arise to growing crops, timber, or fences from the construction, maintenance and operation of" its pipelines. However, defendants' counterclaim greatly exceeds the parameters of that clause.

In the itemized list that appears in paragraph 4 of their counterclaim, defendants have requested an award of damages for "loss of value" to their property (¶4(b)) *plus* various repair and restoration costs, described as compensation for "physical damage" (¶4(c)), "failure to remove construction debris" (¶4(d)), and "failure to repair and restore [their] driveway" (¶4(e)). The request for these types of damages in the conjunctive ("and," ¶4(f)) is improper, as explained below.

The general rule is that where injury to real property is shown to be permanent (*i.e.*, cannot be repaired), the measure of damages is the diminution in the fair market value of the property, comparing its value immediately before and immediately after the damaging event. *Matakitis v. Woodmansee*, 446 Pa. Super. 433, 444, 667 A.2d 228, 233 (1995), *app. denied*, 545 Pa. 680, 682 A.2d 311 (1996). *See also Richards v. Sun Pipe Line Co.*, 431 Pa. Super. 429, 636 A.2d 1162 (1994).

However, if the injury is not permanent, the appropriate measure is the reasonable cost of restoring the property, unless such costs equal or exceed the value of the property. *Kirkbride v. Lisbon Contractors, Inc.*, 385 Pa. Super. 292, 298, 560 A.2d 809, 812 (1989); *Gadbois v. Leb-Co. Builders, Inc.*, 312 Pa. Super. 144, 458 A.2d 555, 559 (1983), *app. dismissed*, 504 Pa. 507, 475 A.2d 742 (1984).  An injury to real property is considered to be permanent only in those instances where the damage was caused by a *de facto* taking (hardly the case here) or where the injury is unequivocally beyond repair. *Kirkbride, supra* at 299, 560 A.2d at 812.

In *Duquesne Light v. Woodland Hills Sch. Dist.,* 700 A.2d 1038, 1053 (Pa. Cmwlth. 1997), *app. denied,* 555 Pa. 722, 724 A.2d 936 (1998), the court refined the traditional rule somewhat by holding that the diminution in value measure (*i.e.,* comparison of "before and after" values) must be applied "where the cost of replacing the real property in its original condition disproportionately exceeds the diminution in value of the property."

These limitations on recovery of restoration costs is designed to avoid the windfall that would otherwise result if the plaintiff was granted a recovery greatly in excess of the loss in

value of his property.  *Douglass v. Licciardi Const. Co., Inc.*, 386 Pa. Super. 292, 296, 562 A.2d 913, 915 (1989), citing *Restatement (Second) of Contracts* § 347, comment (b).

Therefore, defendants' request in the counterclaim for an award of damages for *both* "loss of value" to their property (counterclaim, ¶4(b)) *and* various repair and restoration costs is not authorized by applicable Pennsylvania law.  The counterclaim should be dismissed, and defendants should be required to restate their counterclaim in accordance with Pennsylvania law.

    **B.**   **Defendants' Claim for Damages for "Loss of Use and Quiet Enjoyment" Is Inconsistent with the Terms of the Easements and Pennsylvania Law.**

Defendants' counterclaim also includes a claim for damages for "loss of use and quiet enjoyment" of their property. (Counterclaim, ¶4(a)).  Whether or not such damages may be properly recoverable in an appropriate case, the claim is inconsistent with the terms of the grants, which give Texas Eastern the *right* to "construct, lay, maintain, operate, alter, repair, remove, change the size of, and replace pipe lines and appurtenances thereto," *and* to install additional lines. (Exhibit A to Texas Eastern's complaint).[4]  Moreover, Texas

---

[4] On a motion to dismiss, the Court may consider exhibits of record as well as the "four corners" of the pleading at issue. *Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1384 n.2 (3d Cir. 1994).

Eastern has a right of occupancy consistent with the terms of the easements.

However, the claim for "loss of use and quiet enjoyment" implies a trespass or eviction, while an easement, by definition, contemplates joint occupancy by the parties. *See Lichtenfels v. Bridgeview Coal Co.,* 360 Pa. Super. 304, 309 n.1, 531 A.2d 22, 25 n.1 (1987) (no actionable breach of implied covenant of quiet enjoyment where plaintiff is mere licensee who does not have *exclusive* possession).

Therefore, defendants' request in the counterclaim for an award of damages for "loss of use and quiet enjoyment" is not authorized by applicable Pennsylvania law. The counterclaim should be dismissed, and defendants should be required to conform to Pennsylvania law in restating their counterclaim.

### C. Defendants' Request for an Award of Attorneys' Fees Is Not Authorized.

Finally, the request for an award of attorney's fees (counterclaim, ¶4(f)) is not authorized by Pennsylvania law, under the so-called "American Rule." *Montgomery Ward & Co., Inc. v. Pacific Indem. Co.,* 557 F.2d 51, 58-59 (3d Cir. 1977); *Corace v. Balint*, 418 Pa. 262, 210 A.2d 882 (1965). The easement grants do not contain an attorney's fee clause, and defendants

have not asserted a claim under any statute that authorizes a prevailing party to recover its fees.  Indeed, defendants' counterclaim fails to articulate a legal theory underlying the counterclaim, which must, therefore, be presumed to arise solely under the easement agreements.

### IV.  Conclusion

For the foregoing reasons, Texas Eastern respectfully requests that the Court dismiss defendants' counterclaim because it fails to state a legally sufficient claim for damages.

Respectfully submitted,

KEEFER WOOD ALLEN & RAHAL, LLP

Dated:  June 2, 2003

By  s/Charles W. Rubendall II
Charles W. Rubendall II
I.D. # 23172
210 Walnut Street
P.O. Box 11963
Harrisburg, PA  17108-1963
717-255-8010

Attorneys for plaintiff

**CERTIFICATE OF SERVICE**

I, Charles W. Rubendall II, Esquire, one of the attorneys for plaintiff, hereby certify that I have served the foregoing paper upon counsel of record this date by depositing a true and correct copy of the same in the United States mail, first-class postage prepaid, addressed as follows:

>Jeffrey G. Trauger, Esquire
>Grim, Biehn & Thatcher
>104 South 6th Street
>P. O. Box 215
>Perkasie, PA  18944-0215

>KEEFER WOOD ALLEN & RAHAL, LLP

>By  s/Charles W. Rubendall II
>    Charles W. Rubendall II

Dated:  June 2, 2003